IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GOLDIE J. LORCH, on behalf of herself and similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>FIRST NATIONAL BANK OF PENNSYLVANIA, N.A. and F.N.B. CORPORATION<br><br>Defendants. | CIVIL ACTION<br><br>NO.______________________<br><br>JURY TRIAL DEMANDED |

**COLLECTIVE ACTION COMPLAINT**

Plaintiff Goldie J. Lorch ("Plaintiff"), on behalf of herself and similarly situated employees, brings this collective action lawsuit, pursuant to 29 U.S.C. § 216(b), against Defendants First National Bank of Pennsylvania, N.A. and F.N.B. Corporation (collectively referred to as "Defendants") to recover for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* for misclassifying Plaintiff and other Personal Banking Representatives, Banking Officers, and Branch Bankers (collectively referred to as "Bankers") at Defendants' retail branch locations as exempt from the FLSA's requirement that workers receive overtime premium pay calculated at one and one-half-times their regular rate of pay for all hours worked over forty (40) during the workweek. Plaintiff is also individually bringing claims for retaliation under the FLSA, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.



**JURISDICTION AND VENUE**

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1311 for the claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and for claims brought under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*

2. The United States District Court for the Western District of Pennsylvania has personal jurisdiction because Defendants conduct business within this District.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), inasmuch as Defendants have offices, conduct business, reside in and can be found in the Western District of Pennsylvania, and the cause of action set forth herein has arisen and occurred in part in the Western District of Pennsylvania.

**PARTIES**

4. Plaintiff is an individual residing in Elrama, Pennsylvania. Plaintiff was employed in various positions by Defendants from September 2008 through October 2012 at Defendants' West Mifflin location.

5. Defendant First National Bank of Pennsylvania, N.A. is a nationally chartered banking institute doing business in the Commonwealth of Pennsylvania and within this district. Its principal place of business is located at One F.N.B. Boulevard, Hermitage, Pennsylvania. Defendant First National Bank of Pennsylvania, N.A. is a wholly owned subsidiary of Defendant F.N.B. Corporation.

6. Defendant F.N.B. Corporation is a financial holding corporation incorporated in the state of Florida and registered to do business in the Commonwealth of Pennsylvania. Its principal place of business is located at One F.N.B. Boulevard, Hermitage, Pennsylvania.





7. Defendants jointly operate an estimated 247 retail bank branches under the "First National Bank" brand throughout Pennsylvania, as well as Ohio, Maryland and West Virginia.

8. Defendants are "employers" engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA, 29 U.S.C. § 203, which definitions are incorporated into the FMLA, 29 C.F.R. § 825.800.

9. Defendants jointly employ thousands of employees engaged in interstate commerce.

10. Defendants are establishments engaged in related activities performed through a unified operation or common control for a common business purpose.

11. Defendants have had gross annual operating revenues in excess of $500,000.00.

12. Defendants are and have at all relevant times been employers covered by the record-keeping, minimum wage, wage payment, and overtime mandates of the FLSA.

## FACTS PERTAINING TO PLAINTIFF

13. From approximately September 2008 through April 2010, Plaintiff was employed by Defendants as a Personal Banking Representative at its retail banking location on 2204 Lebanon Church Rd., West Mifflin, Pennsylvania ("the West Mifflin Branch"). From approximately April 2010 through August 2012, Plaintiff was employed as a Banking Officer at this same location. From approximately September 2012 through October 2012, Plaintiff was employed as Branch Banker at this same location. All of these positions are collectively referred to herein as "Banker."

14. Plaintiff's work as a Banker was performed in the normal course of Defendants' business operations.





15. As a Banker, Plaintiff was paid a salary and was classified by Defendants as exempt from the overtime requirements of the FLSA.

16. As a Banker, Plaintiff often worked in excess of forty (40) hours a week, yet, in clear violation of the FLSA, Defendants willfully failed to pay Plaintiff any overtime compensation for such hours.

17. In addition to Plaintiff, Defendants employ numerous other individuals as Bankers at their retail branch locations throughout Pennsylvania, Ohio, Maryland and West Virginia.

18. The job tasks and duties of Plaintiff while working as a Banker for Defendants were not exempt from the overtime requirements of the FLSA.

19. Like Plaintiff, Defendants' other Bankers were paid a salary and classified by Defendants as exempt from the overtime requirements of the FLSA.

20. Like Plaintiff, Defendants' other Bankers perform the same primary duties at work each day and are all subject to Defendants' same policy of not paying Bankers an overtime premium for hours worked in excess of forty hours per work week.

21. In failing to properly compensate Plaintiff and similarly situated Bankers for all hours spent working, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**FACTS PERTAINING TO PLAINTIFF'S RETALIATION CLAIMS**

22. On or about September 12, 2011, Plaintiff took an approximately 60-day leave of absence from employment for a temporarily disabling medical issue (her "FMLA Leave").

23. Plaintiff's FMLA Leave was approved by Defendants, and was administered under Defendants' Family Medical Leave Act ("FMLA") policies and procedures.





24. Plaintiff's FMLA Leave is a protected activity under the FMLA.

25. Prior to her FMLA Leave, Plaintiff's work environment was generally cordial and professional, and she got along well with Joanne Horgos ("Horgos"), her immediate supervisor at the West Mifflin Branch.

26. However, immediately after Plaintiff's return from FMLA Leave, Horgos began to treat Plaintiff differently. Horgos became extremely rude to Plaintiff. Horgos complained about the hassles caused by Plaintiff's FMLA Leave, and about having to hire another employee during that period. Horgos also delayed Plaintiff's mandatory training on new software that had been implemented during Plaintiff's FMLA Leave, despite the fact that Plaintiff could not complete her work without that training.

27. In late November 2011, Plaintiff noticed that the timekeeping records for the West Mifflin Branch's tellers were inaccurate, and that hours were being falsified and otherwise unreported.

28. In late November 2011, Horgos announced that all tellers at the West Mifflin Branch were now required to work on Saturdays.

29. In early December 2012, Plaintiff complained to Horgos regarding the falsified timekeeping records, and noted that "falsifying payroll" was "prohibited by federal law" and that it also violated Defendants' employee handbook. At the same time, Plaintiff also complained that requiring tellers to work on Saturdays was "unfair" and that, since their hours were already being misreported, tellers might not be getting paid the full wages to which they were entitled.

30. Horgos instructed Plaintiff not to "interfere" regarding payroll document falsification, and told Plaintiff that her input regarding mandatory Saturday shifts would be ignored.





31. Horgos's rudeness and dismissiveness toward Plaintiff worsened after Plaintiff made these complaints.

32. Plaintiff attempted to elevate her complaints—regarding payroll falsification, mandatory Saturday shifts, and Horgos's mistreatment—by requesting a meeting with Market Manager Ron Giulianelli in late December 2011. In an email response to Plaintiff's request for a meeting, Giulianelli stated that he "isn't going to detail the way the branch is being run and your un happiness [sic] with it." Giulianelli did not meet with Plaintiff regarding her initial complaint.

33. On February 13, 2012, Horgos announced that Plaintiff would be joining all tellers for mandatory Saturday shifts. Before hearing any objection from Plaintiff, Horgos preemptively stated that if Plaintiff "has a problem" with the mandatory Saturday shifts, she should "take it up with Ron [Giulianelli]."

34. On February 13, 2012, Giulianelli visited the West Mifflin Branch. Plaintiff saw Giulianelli in the employee break room. Before Plaintiff even began to mention her complaints, which Horgos had instructed Plaintiff to take to him, Giulianelli became irate. He shouted at Plaintiff using profane language, stated that the Saturday shifts were mandatory, and said that if Plaintiff "didn't like it" then he would "take her [expletive] resignation right now."

35. One week later, on February 22, 2012, Horgos and Giulianelli signed Plaintiff's performance review for 2011.

36. For the first time in her career, Plaintiff's performance review included several negative comments. Among other negative comments, the performance review criticized Plaintiff for her protected complaints. Specifically, the performance review noted that the





mandatory Saturday shifts—about which Plaintiff had complained on behalf of herself and her co-workers—"has not been received positively with negative communications."

37. In addition to the foregoing allegations, Horgos mistreated and humiliated Plaintiff by continuously forcing her to endure allergic reactions at work.

38. Plaintiff suffers from allergies to various plants, particularly wildflowers.

39. Despite seeing Plaintiff's visible and violent allergic reactions and receiving complaints directly from Plaintiff regarding her allergies, Horgos continually purchased wildflowers to decorate the West Mifflin Branch, and routinely placed them on Plaintiff's desk.

40. On or about June 14, 2012, in an in-person meeting with representatives of Defendants' Human Resources department, Plaintiff complained that she was being singled out for mistreatment by Horgos.

41. During that June 14, 2012 meeting, Plaintiff noted Horgos's rudeness and mistreatment since Plaintiff's return from FMLA Leave, and Giulianelli shouting at her in response to a protected complaint. Further, Plaintiff explained that Horgos was intentionally triggering allergic reactions by placing wildflowers on Plaintiff's desk.

42. The day after Plaintiff made this complaint, Horgos placed another batch of wildflowers on Plaintiff's desk. Plaintiff's allergic reaction to these flowers caused her eyes to tear and her nose and throat to swell, so much that Plaintiff had to rush to the employee break room to vomit.

43. In early July 2012, Defendants posted an available Branch Manager position on the internal (i.e., employee-only) job-posting website. Plaintiff was qualified for and applied for the position.




PDFTECHNOLOGIES
Tools & Components for Serious Developers

44. Plaintiff was not contacted for an interview and she was not considered for the Branch Manager position. Instead, on July 26, 2012, Giulianelli announced that the hiring of Mary Kay, someone from outside the West Mifflin Branch.

45. In late July, 2012, Defendants promoted Judy Vieceli—the person hired by Horgos during Plaintiff's FMLA Leave—to the position of Branch Manager at Defendant's Pleasant Hills location.

46. The Pleasant Hills Branch Manager position was never "posted" and Plaintiff was denied a chance to apply for the position.

47. In August 2012, Defendants announced a "reorganization" of certain positions, including Plaintiff's position of "Banking Officer."

48. Except for Plaintiff, every Banking Officer in the region supervised by Giulianelli was promoted to "Assistant Branch Manager," with corresponding increases in pay. Plaintiff, by contrast, was assigned the title of "Branch Banker," received no increase in pay, was assigned several additional job duties, and was placed at the low end of Defendants' salary scale for Branch Banker positions.

49. Plaintiff made several other verbal and written complaints to Defendants' Human Resources department regarding the retaliation she experienced as a result of her protected FMLA Leave and her FLSA-protected complaints regarding falsification of payroll documents.

50. Among other things, Plaintiff complained of: Horgos's mistreatment of Plaintiff since her return from FMLA Leave; Horgos and Giulianelli's dismissive, angry, and abusive responses to Plaintiff's FLSA-protected complaints; Defendants' failure to perform a thorough investigation into those complaints; Defendants' refusal to consider or interview for open





positions for which Plaintiff was qualified; and Defendants' decision, in the context of a "reorganization," to promote all Banking Officers in the region except for Plaintiff.

51. The Banking Officers who were promoted to Assistant Branch Manager were less experienced than Plaintiff.

52. Defendants' actions, through the conduct of its agents and employees, created a hostile work environment for Plaintiff.

53. Defendants' failure to consider, interview or hire Plaintiff for available positions for which Plaintiff applied and was qualified, constitute adverse employment actions.

54. Defendants' decision to assign Plaintiff to the title of Branch Banker, while promoting less experienced and less qualified Banking Officers, constitutes an adverse employment action.

55. Plaintiff's complaints constitute "protected activity" insofar as they concerned conduct made unlawful by the FLSA and the FMLA.

56. Defendants' creation of a hostile work environment for Plaintiff, and the aforementioned adverse employment actions, were motivated by retaliatory animus in response to Plaintiff's FMLA- and FLSA-protected activities.

## COLLECTIVE ACTION ALLEGATIONS

57. Plaintiff brings this lawsuit as a collective action pursuant to 29 U.S.C. §216(b) of the FLSA, on behalf of the following class of potential opt-in litigants:

> All individuals employed by Defendants as Bankers at their retail bank branches within three years from the commencement of this action who were paid a salary and were classified by Defendants as exempt from the overtime requirements of the FLSA.

58. Plaintiff and the above class members are "similarly situated," as that term is defined in 29 U.S.C. § 216(b), because, *inter alia*, they perform essentially the same respective





job duties, were paid a salary, and were classified as exempt from the overtime requirements of the FLSA. In turn, Defendants' policy denies Plaintiff and the class overtime premium pay for hours worked over 40 in a workweek. Resolution of this action requires inquiry into many common facts, including, *inter alia*, Defendants' common compensation, timekeeping, and payroll practices, and the class members job duties.

**COUNT I**
**(Alleging Violations of the FLSA)**

59. All previous paragraphs are incorporated as though fully set forth herein.

60. Plaintiff and the class members are employees entitled to the FLSA's protections.

61. Defendants are employers covered by the FLSA.

62. The FLSA entitles employees to compensation for every hour worked in a workweek. *See* 29 U.S.C. § 206(b).

63. The FLSA entitles employees to overtime compensation "not less than one and one-half times" their regular rate of pay for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 207(a)(1).

64. Defendants violated the FLSA by failing to compensate Plaintiff and class members for all hours worked and by failing to pay Plaintiff and class members the legally mandated overtime premium rate of not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek. Therefore, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. § 201, *et seq.,* including 29 U.S.C. § 207(a)(1).

65. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions and thus constitute a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).





66. Defendants' willful violation of the FLSA caused Plaintiff and similarly situated employees to suffer a loss of wages and interest.

67. Plaintiff, on behalf of herself and all similarly situated employees of Defendants, seeks damages in the amount of all respective unpaid overtime compensations at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

68. Plaintiff, on behalf of herself and all similarly situated employees of Defendants, also seeks recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief on behalf of herself and all other similarly situated employees who opt-in to this action:

A. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all putative representative action plaintiffs (the FLSA opt-in class), apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consents To Join pursuant to U.S.C. § 216(b);

C. An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;





D. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

E. Back pay damages and prejudgment interest to the fullest extent permitted under the law;

F. Liquidated damages to the fullest extent permitted under the law;

G. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

H. Such other and further relief as this Court deems just and proper.

**COUNT II**
**(Retaliation Under the FLSA)**

69. All previous paragraphs are incorporated as though fully set forth herein.

70. Plaintiff asserted her rights by making statutorily protected complaints, by objecting to practices made unlawful by the FLSA, and by complaining of subsequent mistreatment by Defendants in response to those complaints.

71. In response to Plaintiff's protected activities, Defendants created a hostile work environment for Plaintiff.

72. In response to Plaintiff's protected activities, Plaintiff suffered from several adverse employment actions by giving Plaintiff a negative review, failing to hire or promote Plaintiff, and assigning Plaintiff to a lower title than other Banking Officers in the context of a reorganization.

73. The aforementioned hostile work environment and adverse employment actions were directly in retaliation against Plaintiff for asserting her rights under the FLSA, and were in violation of the FLSA, in particular 29 U.S.C. § 215(a)(3).





74. Defendants' conduct was willful and negligently disregarded Plaintiff's rights under the FLSA.

75. Defendants' conduct caused Plaintiff to suffer lost and/or reduced wages.

76. Defendants' conduct caused Plaintiff embarrassment, humiliation, and emotional distress.

77. As a direct result of the adverse employment actions taken by Defendants, Plaintiff has suffered, and is seeking to recover, damages for lost wages, benefits, and emotional distress.

78. Plaintiff is seeking compensation for attorneys' fees and costs incurred in this matter.

79. Plaintiff is also seeking punitive and/or liquidated damages..

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief:

A. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

B. Back pay damages and prejudgment interest to the fullest extent permitted under the law;

C. Liquidated and/or punitive damages to the fullest extent permitted under the law;

D. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

E. Such other and further relief as this Court deems just and proper.

## COUNT III
**(Retaliation Under the FMLA)**

80. All previous paragraphs are incorporated as though fully set forth herein.





81. Plaintiff asserted her rights by taking FMLA-protected leave, by making statutorily protected complaints when she was mistreated for taking FMLA-protected leave, and by complaining of subsequent mistreatment by Defendants in response to those complaints.

82. In response to Plaintiff's protected activities, Defendants created a hostile work environment for Plaintiff.

83. In response to Plaintiff's protected activities, Plaintiff suffered from several adverse employment actions by giving Plaintiff a negative review, failing to hire or promote Plaintiff, and assigning Plaintiff to a lower title than other Banking Officers in the context of a reorganization.

84. The aforementioned hostile work environment and adverse employment actions were directly in retaliation against Plaintiff for asserting her rights under the FMLA, and were in violation of the FMLA, in particular 29 U.S.C. § 2615(a)(2).

85. Defendants' conduct was willful and negligently disregarded Plaintiff's rights under the FMLA.

86. Defendants' conduct caused Plaintiff to suffer lost and/or reduced wages.

87. Defendants' conduct caused Plaintiff embarrassment, humiliation, and emotional distress.

88. As a direct result of the adverse employment actions taken by Defendants, Plaintiff has suffered, and is seeking to recover, damages for lost wages, benefits, and emotional distress.

89. Plaintiff is seeking compensation for attorneys' fees and costs incurred in this matter.

90. Plaintiff is also seeking punitive and/or liquidated damages.





## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief:

A. A declaratory judgment that the practices complained of herein are unlawful under the FMLA;

B. Back pay damages and prejudgment interest to the fullest extent permitted under the law;

C. Liquidated and/or punitive damages to the fullest extent permitted under the law;

D. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

E. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial as to all claims so triable.

Date: June 24, 2013

/s/ Vincent J. Mersich
Vincent James Mersich (PA I.D. No. 310971)
Law Office of Vincent J. Mersich, LLC
400 Market Street
Elizabeth, PA 15037
Phone: 412.384.8803 / 724.493.5201
Fax: 412.384.8805
Email: vincent.mersich@outlook.com

Brendan J. Donelon (*pro hac vice admission anticipated*)
DONELON, P.C.
420 Nichols Road, Ste. 200
Kansas City, Missouri 64112
Phone: (816) 221-7100
Fax: (816) 709-1044
Email: brendan@donelonpc.com





PDFTECHNOLOGIES
Tools & Components for Serious Developers