IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GOLDIE J. LORCH, on behalf of herself and similarly situated employees, | : : : |
| Plaintiff, | : CIVIL ACTION : : NO. 2:13-cv-0894 |
| v. | : : |
| FIRST NATIONAL BANK OF PENNSYLVANIA, N.A. and F.N.B. CORPORATION | : Judge Terrence F. McVerry : : |
| Defendants. | : : : |

**DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DECERTIFY THE COLLECTIVE ACTION**

I.   INTRODUCTION

On December 16, 2014, this Court, pursuant to a stipulation by the parties, conditionally certified a collective action under Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b) "for the purpose of facilitating notice to potential opt-in plaintiffs, comprised of the following: Employees who were or are employed by First National Bank of Pennsylvania as a Personal Banker, Banking Officer, and/or Branch Banker at any of its retail branch banks from December 16, 2010 to the present." (Dkt. 16). The parties have completed discovery limited to the issue of whether a collective action should be finally certified. Defendants respectfully now move to decertify the collective action.

II.   BACKGROUND

On June 25, 2013, plaintiff Goldie Lorch sued Defendants for, *inter alia*, violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") on behalf of herself and other allegedly

misclassified bank employees.[1]  (Dkt. 1). Defendants accepted service of the Complaint on September 18, 2013, filed their Answer denying plaintiff's allegations on October 9, 2013, and filed their Amended Answer on November 1, 2013. (Dkts. 5, 6, 7, 11).

On December 13, 2013, the parties stipulated to conditional certification of Count I for the limited purpose of distributing an agreed-upon notice to potential opt-in plaintiffs. (Dkt. 15). On December 16, 2013, the Court conditionally certified the notice class, ordered Defendants to provide mailing addresses for notice purposes by December 31, 2013, and ordered plaintiffs' counsel to distribute the Notice form within 14 days of receiving the mailing address information. (*Id*.). The Court directed that all consent forms be filed *en masse* after the expiration of the 60-day opt-in period.  By agreement, plaintiffs' counsel noted on the forms the date they received them, and that the noted date of receipt would serve as the date upon which the statute of limitations would be tolled for each of the plaintiffs' claims.

The notices were sent to approximately 62 putative collective action members on January 29, 2014. (Dkts. 17-21). The opt-in period ended 60 days later, on March 30, 2014, and on April 14, 2014 five "Consent to Become a Party Plaintiff" forms were filed on behalf of the following: Rebecca Beblar, Francine Valentine, Carla J. Reichard, Elaine Claire Ashman, and Emily Glova. (Dkt. 24). Two of the opt-in plaintiffs – Rebecca Beblar and Carla J. Reichard – subsequently withdrew their consent to participate further as opt-in plaintiffs.[2]   As such, only three opt-in plaintiffs remain, Valentine, Ashman and Glova.

---

[1] The plaintiff also brought individual claims for retaliation under the FLSA and the Family and Medical leave Act, 29 U.S.C. §§ 2601, *et seq*.

[2] Plaintiffs' counsel so informed defense counsel in an email dated August 14, 2014, and agreed that they would file notices of withdrawals of the consents with the Court.  To date, no such notices have been filed.

Discovery on the issue of whether a collective action should be finally certified has now been completed and that issue is ripe for decision.

III.   STATEMENT OF FACTS

Defendants have filed with their Motion to Decertify and this Brief a detailed statement of facts that are supported with appropriate citations to the record.  Those facts will be referenced below in connection with the discussion of the criteria for decertification, but will not be repeated here, except for the following brief summary.

The named plaintiff is Goldie Lorch, who, during the relevant time period,[3] worked for defendant First National Bank of Pennsylvania, Inc. ("FNB") as a Banking Officer and a Branch Banker at the West Mifflin Branch.  Opt-in plaintiff Emily Glova worked for FNB as a Banking Officer, and then as an Assistant Branch Manager, at the Shadyside Branch.  Opt-in plaintiff Elaine Ashman worked for FNB as a Personal Banker at its Brentwood Branch on Brownsville Road and later on Town Square Way, when the Branch was moved.  Opt-in plaintiff Francine Valentine worked for FNB as a Personal Banker at its Carson Street Branch.

All of the plaintiffs were classified as exempt executive or administrative employees under the FLSA and were paid on a salary basis.

IV.   PLAINTIFFS CANNOT PROVE THAT THEY ARE SIMILARLY SITUATED

   A.   **Standard for Decertification**

The FLSA provides that an action may be brought against any employer for a violation of the FLSA "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  The statute does not define the term "similarly situated."  However in *Zavala v. Wal-Mart Stores, Inc.,* 691 F. 3d 527 (3d Cir. 2012), the Third Circuit

---

[3] Which would be December 16, 2010, as established by the Order conditionally certifying a collective action.

3

Court of Appeals issued authoritative guidance on the legal standards by which certification decisions are to be made in the district courts. The determination is typically made in two stages – so-called conditional certification, followed by a final decision on certification.[4]

At the conditional certification stage, where the court is deciding only whether to facilitate notice of the action to putative collective action members, it is to apply a lenient standard, asking essentially whether there are substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id*. at 536, *citing Symczyk v. Genesis Healthcare Corp*., 656 F. 3d 189, 194 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523, 1526 (U.S. 2013); *Moore v. PNC Bank, N.A.*, No. 2:12-cv-1135, 2013 WL 2338251 at *4 (W.D. Pa. May 29, 2013). In the present case, the parties stipulated to conditional certification.

At the final certification stage, however, the court is to apply an "ad hoc" analysis, which looks at a number of factors relevant to whether the group of putative collective action members are "similarly situated." *Zavala, supra*, at 536-37:

> Relevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment.

*Id.* at 536-37. Other considerations that may lead to denial of certification are the existence of individualized defenses, fairness and procedural considerations, and the inability to establish their claims by relying on common evidence. *See Zavala,* 691 F.3d at 537; *see also*, *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-cv-1283, 2014 WL 1317595, *57-58 (W.D. Pa Mar. 31,

---

[4] The two-step procedure was approved by the Third Circuit Court of Appeals in *Symczyk v. Genesis Healthcare Corp*., 656 F. 3d 189, 194 (3d Cir. 2011).

4

2014). Importantly, the *Zavala* Court held that sharing "common links" such as being subjected to a common employer practice that would help demonstrate a violation of the FLSA is of *"minimal utility"* if *"liability and damages still need to be individually proven."* *Id*. at 538. (emphasis added)[5]

Plaintiffs bear the burden of demonstrating by a preponderance of the evidence that the opt-in members of the collective action are in fact similarly situated to the named plaintiff. *Zavala,* 691 F. 3d at 537. This standard requires a court to evaluate all of the evidence submitted without reading the record in the light most favorable to the non-movants or assuming the truth of their evidence. *Cf. Zavala, supra*, at 538 n.7 At this second stage, "a court … then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Symczyk*, 656 F.3d at 193 (emphasis added), *Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291, 299 (E.D. Pa. 2010) (the final certification decision requires the court to engage in "a specific factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action.").

If the collective members do not satisfy their burden, "the court will decertify the group, dismiss the opt-in plaintiffs without prejudice, and permit any remaining plaintiffs to move on to the trial stage of litigation." *Camesi v. University of Pittsburgh Medical Center*, No. 09-85, 2011 WL 6372873 at *12 (W.D. Pa. Dec. 20, 2011), *aff'd on other grds.,* 729 F. 3d 239 (3d Cir. 2013); *Lugo v. Farmer's Pride Inc*., 737 F. Supp. 2d 291, 299-300 (E.D. Pa. 2010).

---

[5] *Zavala* has been interpreted by district courts in the Third Circuit as creating a new heightened standard. *See, e.g*., *Moore v. PNC Bank, N.A*., 2:12-CV-1135, 2013 WL 2338251, at *6 (W.D. Pa. May 29, 2013). *See also*, *Martin v. Citizens Fin. Grp., Inc*., CIV.A. 10-260, 2013 WL 1234081, at *3 (E.D. Pa. Mar. 27, 2013) (noting plaintiffs' "higher burden at the decertification stage" and granting motion to decertify).

### B. The Material Dissimilarities Among the Plaintiffs Compels Decertification

In evaluating whether plaintiffs are similarly situated, courts often first consider the factual and employment settings of the plaintiffs. *Martin v. Citizens Financial Group, Inc.*, No. 10-260, 2013 WL 1234081, *3 (E.D. Pa. 2010). Certification is appropriate only where plaintiffs were "employed in the same corporate department, division, and location" and "have similar salaries and circumstances of employment." *Zavala*, 691 F.3d at 536-37. As district courts in the Third Circuit have recognized, substantial variances among plaintiffs' day-to-day job duties and employment settings weigh in favor of decertification. *Karlo v. Pittsburgh Glass Works, LLC*, 2014 WL 1317595, *19 (*citing*, *Kuznyetsov*, 2011 WL 6372852, at **5-8). Where the putative class is comprised of individuals with different titles, salaries, duties performed, and employment circumstances, the named plaintiffs' experiences cannot be "fairly imputed to all plaintiffs." *Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291, 316 (E.D. Pa. 2010).

Plaintiffs have one thing in common – they were all classified as exempt from the overtime pay requirements of the FLSA. However, where differences among the plaintiffs in what they do and the circumstances in which they work would prevent a collective determination of whether that classification is warranted, courts routinely refuse to certify so-called common classification cases for collective treatment. *E.g. Moore v. PNC Bank, N.A.*, 2013 WL 2338251 at *4 (W.D. Pa. May 29, 2013)(denying conditional certification); *Harriel v. Wal–Mart Stores*, Inc., 2012 WL 2878078, at *5 (D.N.J. July 13, 2012 ); *Guillen v. Marshalls of MA, Inc.*, 841 F.Supp.2d 797, 801 (S.D.N.Y.2012), adopted by, 2012 WL 2588771 (S.D.N.Y. July 2, 2012) ("Obviously, his pointing to a common policy at Marshalls regarding the job duties of ASMs provides no proof that other ASMs are performing non-exempt duties, particularly given that all policies and writings from Marshalls dictate just the opposite."); *Morisky v. Public Service and Gas Co.*, 111 F. Supp. 2d 493, 498-99 (D.N.J. 2000) (finding defendants' "common scheme" of

classifying employees as exempt did not bind class sufficiently such that plaintiffs were "similarly situated"); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010).  In *Colson*, the court explained that:

> As a matter of both sound public policy and basic common sense, the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as "similarly situated" for § 216(b) purposes.

(*Id.*).  See *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012) ("As numerous courts in [the Second] Circuit have held, the mere classification of a group of employees—even a large or nationwide group as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes.")

Here, as discussed below, during the time frame for which they seek to establish that they were misclassified, the named and three opt-in plaintiffs worked in different position titles, in different locations, and reported to at least six different managers (and at times worked without Branch Managers or acted as the Branch Manager in their branch).  The plaintiffs had dissimilar experiences in banking, job responsibilities, compensation, and other circumstances of employment.  While Defendants expected their Personal Bankers, Banking Officers, and Branch Bankers to fulfil their respective "Position Purpose(s)" and to perform their respective exempt "Principal Accountability Statement" functions, in practice the way each employee performed his or her duties varied from day-to-day, branch-to-branch, and employee-to-employee based on individual branch circumstances, including the type of branch, the staffing at the branch, and the needs of customers at the branch. This is true even for employees who worked in the same position titles.

*1     Plaintiffs worked in different jobs.*

Goldie Lorch, the named plaintiff, worked for most of the relevant time period as a Banking Officer. She worked for a few weeks at the end of her tenure as a Branch Banker, a newly created position that none of the opt-in plaintiffs ever held. The only one of the plaintiffs who shared a job title with Ms. Lorch is Emily Glova, who was a Banking Officer for part of her tenure, until getting a promotion to Assistant Branch Manager. Assistant Branch Manager is not a job that is encompassed within this proposed collective action. Francine Valentine and Elaine Ashman, on the other hand, were Personal Bankers during the entire period, a title that neither Lorch nor Glova held.

Each of the three positions, Banking Officer, Personal Banker and Branch Banker had its own job description. The differences among the job descriptions are reviewed in detail in the Statement of Facts. (SOF ¶¶ 80-90, 96-100) Although there were common duties, the Personal Banker job focused on providing financial assistance to customers as well as operational oversight for branch employees. The Banking Officer job built upon the Personal Banker job and had the additional responsibility of assisting in sales and branch management. The Branch Banker job description shares attributes of both, since it was created when the other two job titles were eliminated. As noted, only Goldie Lorch held the Branch Banker job.

Clearly, the fact that Ms. Lorch was not a Personal Banker should disqualify her from representing Personal Bankers in a collective action, because they are a different jobs.

*2.     Plaintiffs had different managers.*

None of the four plaintiffs worked under the same Branch Manager. Instead they worked under six different Branch Managers and, in fact, at times at branches that did not have a Branch Manager. For example, Ashman's Branch Manager was on leaves of absence for over a year

8

during her last few years of employment.  She was in charge of the office during these absences.  (SOF ¶ 32)

Having different Branch Managers clearly affected the duties that the plaintiffs respectively performed.  Glova's manager, for example, was rarely in the Branch, leaving Glova in charge a large part of the time.  (SOF ¶¶ 58-60)  Lorch testified that her manager was frequently absent, and that she "ran the branch" in her absence. (SOF ¶ 19)  Also, Lorch testified that her Branch Manager materially changed her duties toward the end of her tenure, which reflects the impact that one's Branch Manager can have on the nature of the duties of the position. (Lorch Dep 18-19)  Valentine, on the other hand, was rarely left in charge of the branch by her manager.  (SOF ¶ 78)  As just mentioned, Ashman's manager was often on leave, making Ashman the *de facto* Branch Manager for much of the relevant period of time. It is clear that the differences in managers affected greatly the nature of the work that each of the plaintiff's performed, enhancing the individuality of their cases.

       3. *Plaintiffs worked at different locations.*

The three opt-ins and Lorch all worked at different branches.  The location made a difference in the nature of the duties the plaintiffs performed, as well as the amount of time devoted to them.

Glova, for example, worked at what was called a "de novo" location, in Shadyside.  It had no established customer base and very little customer traffic in the beginning, so both she and her Branch Manager spent a significant amount of time outside of the Branch doing marketing, business development, promotions and community relations activities.  (SOF ¶¶ 56, 58, 61-63)  She spent a relatively small amount of time on customer-focused operations or transactional duties such as opening new accounts, assisting with loan application or conducting

account maintenance during the early months. (SOF ¶ 62)

Ashman moved from one location to another and her duties changed materially. When Ashman worked at the Brownsville Road location, the tellers reported to her, she had input into discipline and termination decisions, she ran daily and weekly meetings with the staff, and she communicated directly with her Market Manager on a regular basis and managed the office for extended periods of time. (SOF ¶¶ 31-36) However, when she moved to the Town Square Way location, there was a Branch Manager and an Assistant Branch Manager, so her duties shifted from managerial to more of an operational, training and customer-focused role. (SOF ¶¶37-42)

Valentine worked at Carson Street branch most of the time, but she also "floated" to other locations on an as needed basis. (SOF ¶ 69) At Carson Street, there was a Branch Manager, an Assistant Branch Manager, tellers and there were two Personal Bankers, one of whom was Valentine. (SOF ¶ 72) Consequently, Valentine spent most of her time in customer- and sales-focused activities. (SOF ¶¶ 74-76)

Thus, the differences in locations among the plaintiffs and the named plaintiff materially affected the nature of their duties and the individuality of their cases.

    4. *The plaintiffs salaries varied widely*

One of the factors mentioned in the case law cited above is whether there is a similarity in the salaries paid to the employees. The salaries of Ms. Lorch and the three opt-ins ranged from a low of $26,904 for Valentine to a high of $38,592 for Glova. (Campbell Decl. ¶¶28-31) These differences could not be attributable to seniority, because Ms. Glova was the most recently hired of the plaintiffs. A forty percent difference between the low and the high salaries suggests a clear difference in the nature and the value of the jobs, further demonstrating that the plaintiffs are not similarity situated.

### 5. *The plaintiffs performed different duties*

As already discussed, the differences in titles, locations and supervisors resulted in material differences in what the plaintiff's did in their jobs. There are many other respects in which the plaintiffs, as they described how their jobs differed from their written job descriptions, underscored that each would have to prove her own misclassification case. (SOF ¶¶ 101-108) There is no unity of proof.

Both the named plaintiff and Emily Glova were Banking Officers. Yet, while Glova said that the Banking Officer job description correctly described her duties, except for creating production goals and approving loans (Glova Dep. 21-23, Exh. 3), Lorch went over the same job description and denied performing many of the functions on that document. (Lorch Dep. 15, 26-35, 63 Exh. 1) She even denied performing functions on which her performance was reviewed in evaluations that she signed.[6] (*Id*. 55-56) Despite having the same job titles, the differences in duties between these two plaintiffs, as they themselves have described them, strongly counsels against a finding that they are similarly situated in any relevant sense.

The same conclusion appears when one reviews the testimony of Ashman and Valentine, both of whom worked as Personal Bankers. Ashman testified that her job duties as a Personal Banker at the Brownsville Road location, where she spent most of the relevant time period, were not different from what she did as an Assistant Vice President and Assistant Branch Manager for Iron and Glass Bank at the same location, when there was no on-site Branch Manager. (Ashman Dep. 6-8) The tellers reported to her and she was the person in charge when the Branch Manager was not there. (*Id*. 20-21) By contrast, Personal Banker Valentine testified that she was not able

---

[6] Lorch was not entirely consistent in her testimony. She testified that her Branch Manager was often working outside of the branch, and that she "ran the branch" in Ms. Horgos' absence. (Lorch Depo. 21, 29, 43). Ms. Lorch also testified that she thought she "assisted in the management of the branch" but "at the end" they told her she had no supervisory authority, referring to an August 2012 meeting. (*Id*. at 29-30).

to act independently on decisions, did not participate in planning branch goals and did not provide oversight to the employees.  (Valentine Dep. 22, 25, 28).

One would not be entitled to draw any conclusions about the exempt status of Ashman's job from Valentine's description of the Personal Banker job.  Nor could one reach any conclusions about Glova's classification from hearing Lorch describe what a Banking Officer does.  In other words, they are not similar in their duties.

> 6.  *In combination, these differences compel a finding that plaintiffs are not similarly situated.*

The FLSA  requires the payment of overtime only to non-exempt employees. 29 U.S.C. § 207. Where an employee is properly classified as exempt, there is no FLSA violation for failure to pay that employee overtime wages. 29 U.S.C. § 213(a). The exempt status of an employee must be determined on the basis of whether the employee's salary and the duties they actually performed meet the requirements of the regulation. *Id*.

Here, each plaintiff was clearly paid on a salary basis, and earned in excess of the minimum threshold amount.  Therefore, any merits analysis hinges on each plaintiffs' primary duties. In reviewing the deposition testimony for the four plaintiffs as well as the declarations of the plaintiffs' former managers, it is clear that no factual consensus exists. The primary job duties and responsibilities varied from plaintiff to plaintiff, and even at times from one period of employment to another and from one location to another. The variations are evident in the type of exempt work performed or allegedly not performed, the extent of the plaintiffs' authority over subordinate employees and to make significant financial decisions, and the weight given to each plaintiffs' hiring, disciplinary, human resources, and personnel management recommendations. *Morisky*, 111 F. Supp. 2d at 498; *see also Reyes v. Texas Ezpawn, L.P.*, No. V-03-128, 2007 WL 101808, *5 (S.D. Tex. Jan. 8, 2007) (acknowledging in defense analysis that "the degree of

discretion and authority each [opt-in Plaintiff] exercised varied depending on store management and store demographics, making this case particularly unsuitable for collective treatment when applying exemption analysis").

It is not possible to establish each plaintiffs' daily tasks through common testimony, and Defendants are entitled to question each individual plaintiff about his or her hours worked, to impeach the credibility of individual plaintiffs by questioning those plaintiffs about contradictory prior responses given, and to present witnesses who dispute plaintiffs' testimony. Resolving these issues with regard to one plaintiff simply does not accomplish the task for any of the others. For this reason alone, certification should be denied. *See Bramble v. Wal-Mart Stores, Inc.*, No. 09-4932, 2011 WL 1389510*,* at *4 ("The right to proceed collectively may be foreclosed where 'an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.'").

    **C.    The Presence of Individualized Defenses Favors Decertification**

As stated by the Court of Appeals in *Zavala, supra*, at 538, the presence of individualized defenses is a factor weighing in favor of decertifying the class.

    *1.    Statute of Limitations/Willfulness*

The Portal to Portal Act establishes a two-year statute of limitations for claims alleging a violation of Section 207 of the FLSA, except in cases of willful violations, in which case a limitations period of three years applies. 29 U.S.C. § 255 (a). The limitations period is tolled in a collective action when the consent to opt in form is filed with the Clerk of Court. 29 U.S.C. § 256. The plaintiffs' claims for overtime pay would, therefore, be cut off with the paycheck received more than two or three years before the individual's consent form was filed. 29 CFR § 790.21 (b); *Hughes v. Region VII Area Agency on Aging*, 542 F. 3d 169, 187 (6th Cir. 2008)("An

FLSA cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed.").

Defendant has a statute of limitations defense to these claims, and the issue of willfulness will come into play with all of them. That is an issue that would have to be resolved on a claim by claim basis, given the differences among the plaintiffs' claims.

Opt-in plaintiff Francine Valentine's last day worked was January 28, 2011. Her "Consent to Join" form was received by plaintiff's counsel on February 7, 2014, which means that her claim is barred even under a three-year statute of limitations.

Named plaintiff Goldie Lorch's last day of work was September 15, 2012. Ms. Lorch has not yet filed a written consent form with the clerk's office. The Portal to Portal Act clearly provides that, in a collective action, the named plaintiff must file both a complaint and a written consent form to toll the limitations period. 29 U.S.C. § 256.[7] Where the named plaintiff has not filed the consent, the statute of limitations continues to run until the claim is barred. *Frye v. Baptist Memorial Hosp., Inc.*, 495 Fed. Appx. 669, 675 (6th Cir.2012)("Accordingly, courts construe the above language [Section 256] to do what it says: require a named plaintiff in a collective action to file a written consent to join the collective action."); *In re Food Lion, Inc.,*

---

[7] In the case of a collective or class action … it shall be considered commenced in the case of any individual claimant –
- (a) On the date when the complaint is filed,, if he is specifically named as a party plaintiff in the complaint *and his written consent to become a party plaintiff is filed on such date* in the court in which the action is brought; or
- (b) If such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256. (emphasis added)

1998 WL 322682 at *13 (4th Cir. June 4, 1998)(unpublished *per curiam*); *Songu-Mbriwa v. Davis Memorial Goodwill Industries,* 144 F.R.D. 1 (D.D.C. 1992). Thus, under a two-year statute of limitations, Lorch's case is barred completely.

Ashman's last paycheck was earned on June 21, 2012. She filed her written consent on February 24, 2014, meaning that she has either four months or a year and four months of back wages at stake, depending upon whether a violation would be found to be willful.

These are individualized defenses that suggest that a collective action should not be certified.

                2.      *Entitlement to Overtime*

The FLSA does not provide a remedy for an employee who has worked hours for which he or she was not paid by the employer, unless the failure to compensate the employee would result in the employee not earning the minimum wage, or unless the uncompensated hours would have resulted in the employee working over 40 hours in the work week. *U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F. 2d 487, 490 (2d Cir. 1960); *Monahan v. County of Chester,* 95 F. 3d 1263, 1282 (4th Cir. 1996). There is no allegation that any of the opt-ins did not make the minimum wage. Each plaintiff must, therefore, prove as an element of a cause of action under the FLSA, not as a matter of damages, that he worked overtime hours but was not paid for them. 29 U.S.C. §207.

As is evident from a review of the Statement of Facts, there are individualized issues as to whether any of the plaintiffs ever worked over 40 hours in a week, and even more so, how often. Defendant is entitled to cross-examine and defend each of the plaintiff's claims by showing that that person did not work any overtime, even if she should have been classified as non-exempt.

### D.     Fairness and Procedural Considerations

A final factor that often is discussed in deciding a decertification motion is whether fairness or procedural considerations commend a collective action, despite some differences among the claimants.  The concern that courts have cited as favoring a collective action is that judicial economy would not be served by having hundreds of individual suits rather than a single collective action.  *E.g., Andrako v. U.S. Steel Corp*, 788 F. Supp. 2d 372, 383 (W.D. Pa. 2011)(Ambrose, C.J.); *Plewinsky v. Luby's, Inc.,* 2010 WL 1610121 at *6 (S.D. Tex. Apr. 21, 2010).

However, in the present case there is no specter of hundreds, or even tens, of individual lawsuits.  On the contrary, each of these plaintiffs could readily have her own claims decided in her own case.  There is no substantial issue of fairness or judicial economy, if each is put to her own proofs.  Thus, the jury confusion that would be entailed by attempting to consolidate these individualized claims into a single trial easily outweighs any issues of judicial economy.

### V.    CONCLUSION

In the end, these claims would actually require four separate mini-trials for liability, and individual damages calculations as to each plaintiff given their differing salaries and hours allegedly worked. Plaintiffs are unable to show through *any* competent evidence, let alone by a preponderance of the evidence, that the opt-in plaintiffs are similarly situated to the named plaintiff.  The Court should, therefore, grant the defendants' Motion to Decertify, dismiss the claims of the opt-in plaintiffs, and allow the claim of Ms. Lorch to continue alone.

       Respectfully submitted,


        s/John J. Myers
       John J. Myers, Pa. I.D. No. 23596
       Joshua C. Vaughn, Pa. I.D. No. 203040
       ECKERT SEAMANS CHERIN & MELLOTT, LLC
       44th Floor 600 Grant Street
       Pittsburgh, PA  15219-2788
       (412) 566-5900 (telephone)
       (412) 566-6099 (facsimile)

       *Attorney for Defendants*